DAVID A. PEREZ (*admitted pro hac vice*)
DavidPerez@mofo.com
MALLORY A. GITT (*admitted pro hac vice*)
MGitt@mofo.com
MORRISON & FOERSTER LLP
925 Fourth Avenue, Floor 36
Seattle, Washington 98104-1157
Telephone: 206.327.6500
Facsimile: 206.260.8813

DIANNE RYOO (CA SBN 346017)
DRyoo@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
SONY INTERACTIVE ENTERTAINMENT LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

ALEXANDER SHIMOTA, an individual; RICARDO CAMARGO, an individual; JOHN ELLIOTT, an individual; and all others similarly situated,

Plaintiffs,

v.

ACTIVISION BLIZZARD, INC.; ANNAPURNA GAMES; CAPCOM U.S.A. INC.; ELECTRONIC ARTS INC.; HUMBLE BUNDLE, INC.; SEGA OF AMERICA, INC.; SONY INTERACTIVE ENTERTAINMENT LLC; SQUARE ENIX OF AMERICA HOLDINGS, INC.; UBISOFT, INC.; VALVE CORPORATION; WARNER BROS. INTERNATIONAL ENTERPRISES INC.; AND DOES 1-10,

Defendants.

Case No. 3:26-cv-12291-TSH

**DEFENDANT SONY INTERACTIVE ENTERTAINMENT LLC'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

Date: December 3, 2026

Time: 10:00 a.m.
Courtroom: Courtroom E, 15th Floor
Judge: Hon. Thomas S. Hixson

## NOTICE OF MOTION

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 3, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom E, 15th Floor, of the United States District Court, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Thomas S. Hixson, Defendant Sony Interactive Entertainment LLC ("SIE") will and hereby does move under Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing with prejudice the First and Second Causes of Action of the Complaint filed by Alexander Shimota, Ricardo Camargo, and John Elliott (collectively, the "Plaintiffs") (ECF No. 1-1) ("Complaint" or "Compl.").[1]

SIE respectfully requests an order dismissing with prejudice the First and Second Causes of Action brought against it in the above-captioned matter. The grounds for this Motion are that the Complaint does not plausibly allege that SIE joined any agreement among publishers or any other conspiracy in restraint of trade; that SIE's own arrangement with Valve Corporation is vertical, fixes no price, and is governed by the rule of reason, which the Complaint does not satisfy as to SIE; that the Complaint alleges no antitrust injury caused by SIE under any standard; and that the Complaint does not state a claim under the UCL or a basis for the relief Plaintiffs seek under it. This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the pleadings, attachments, and records on file in this action, and such other written or oral argument as may be presented at or before the time this Motion is heard by the Court.

[1] SIE files this motion subject to, and without waiving, its right to compel arbitration of the claims of any Plaintiff or putative class member who has agreed to arbitrate disputes with SIE.

Dated: October 28, 2026

MORRISON & FOERSTER LLP

By: /s/ David A. Perez

David A. Perez (*admitted pro hac vice*)
Mallory A. Gitt (*admitted pro hac vice*)
Dianne Ryoo

*Attorneys for Defendant*
SONY INTERACTIVE ENTERTAINMENT LLC

# TABLE OF CONTENTS


Page

I. INTRODUCTION .......... 2
II. BACKGROUND .......... 3
III. LEGAL STANDARD .......... 6
IV. ARGUMENT .......... 6
A. Plaintiffs Fail to State a Cartwright Act Claim Against SIE .......... 6
1. The Complaint Alleges No Facts About SIE .......... 7
2. The Complaint Alleges No Agreement Among Publishers .......... 9
3. SIE's Own Arrangement with Valve Fixes No Price and Is Governed by the Rule of Reason .......... 12
4. The Complaint Alleges No Unreasonable Restraint Attributable to SIE .......... 15
5. Plaintiffs Allege No Antitrust Injury Caused by SIE .......... 16
B. Plaintiffs Fail to State a UCL Claim .......... 17
C. Dismissal Should Be With Prejudice .......... 21
V. CONCLUSION .......... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*49er Chevrolet, Inc. v. Gen. Motors Corp.*,
803 F.2d 1463 (9th Cir. 1986) ........ 11

*Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*,
744 F.3d 595 (9th Cir. 2014) ........ 21

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
190 F.3d 1051 (9th Cir. 1999) ........ 17

*In re Amazon.com, Inc. eBook Antitrust Litig.*,
No. 21-cv-00351 (GHW) (VF), 2022 WL 4581903 (S.D.N.Y. Aug. 3, 2022) ........ 10, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*Atl. Richfield Co. v. USA Petroleum Co.*,
495 U.S. 328 (1990) ........ 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6, 8, 17

*Beverage v. Apple, Inc.*,
101 Cal. App. 5th 736 (2024) ........ 14, 19

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
727 F.3d 917 (9th Cir. 2013) ........ 9

*Blind Dr. Inc. v. Hunter Douglas, Inc.*,
No. 04-cv-2678, 2004 WL 1976562 (N.D. Cal. Sept. 7, 2004) ........ 11

*Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*,
65 F.3d 1406 (7th Cir. 1995) ........ 13

*Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*,
985 F. Supp. 2d 612 (S.D.N.Y. 2013) ........ 16

*Brantley v. NBC Universal, Inc.*,
675 F.3d 1192 (9th Cir. 2012) ........ 15

*Broad. Music, Inc. v. CBS, Inc.*,
441 U.S. 1 (1979) ........ 13

*Bus. Elecs. Corp. v. Sharp Elecs. Corp.*,
485 U.S. 717 (1988) ........ 13

*Cal. Crane Sch., Inc. v. Google LLC*,
722 F. Supp. 3d 1026 (N.D. Cal. 2024) .......... 18, 19

*Carvalho v. Equifax Info. Servs., LLC*,
629 F.3d 876 (9th Cir. 2010) .......... 21

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) .......... 18, 20

*Chavez v. Whirlpool Corp.*,
93 Cal. App. 4th 363 (2001) .......... 14, 19

*In re Cipro Cases I & II*,
61 Cal. 4th 116 (2015) .......... 13, 15

*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
236 F.3d 1148 (9th Cir. 2001) .......... 6

*Continental T.V., Inc. v. GTE Sylvania Inc.*,
433 U.S. 36 (1977) .......... 16

*Copperweld Corp. v. Independence Tube Corp.*,
467 U.S. 752 (1984) .......... 9

*Cornish-Adebiyi v. Caesars Ent., Inc.*,
184 F.4th 172 (3d Cir. 2026) .......... 11

*D'Augusta v. Am. Petro. Inst.*,
117 F.4th 1094 (9th Cir. 2024) .......... 7

*Dimidowich v. Bell & Howell*,
803 F.2d 1473 (9th Cir. 1986) .......... 15

*Doe v. CVS Pharm., Inc.*,
982 F.3d 1204 (9th Cir. 2020) .......... 18, 19

*Duffy v. Yardi Sys., Inc.*,
758 F. Supp. 3d 1283 (W.D. Wash. 2024) .......... 11

*In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*,
28 F.4th 42 (9th Cir. 2022) .......... 18

*Eichman v. Fotomat Corp.*,
880 F.2d 149 (9th Cir. 1989) .......... 17

*Elliott v Valve Corp.*,
No. 2:24-cv-01218 (W.D. Wash.), ECF No. 1 .......... 5

*Epic Games, Inc. v. Apple Inc.*,
161 F.4th 1162 (9th Cir. 2025)........................................................................................ 19

*Epic Games, Inc. v. Apple, Inc.*,
67 F.4th 946 (9th Cir. 2023)............................................................................... 12, 13, 19

*Exxon Corp. v. Super. Ct.*,
51 Cal. App. 4th 1672 (1997)........................................................................................ 14

*Filco v. Amana Refrigeration, Inc.*,
709 F.2d 1257 (9th Cir. 1983)........................................................................................ 14

*Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*,
55 Cal. App. 5th 381 (2020)........................................................................................ 14

*Frame-Wilson v. Amazon.com, Inc.*,
591 F. Supp. 3d 975 (W.D. Wash. 2022)........................................................................ 13

*Gibson v. Cendyn Grp., LLC*,
148 F.4th 1069 (9th Cir. 2025)..................................................................................*passim*

*Guzman v. Polaris Indus. Inc.*,
49 F.4th 1308 (9th Cir. 2022)........................................................................................ 20

*In re Ins. Brokerage Antitrust Litig.*,
618 F.3d 300 (3d Cir. 2010)..................................................................................... 11, 12

*Interstate Circuit, Inc. v. United States*,
306 U.S. 208 (1939)........................................................................................................ 11

*Ixchel Pharma, LLC v. Biogen, Inc.*,
9 Cal. 5th 1130 (2020)...................................................................................................... 13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009).......................................................................................... 7

*Kendall v. Visa U.S.A., Inc.*,
518 F.3d 1042 (9th Cir. 2008)................................................................................ 7, 8, 17

*Key v. Qualcomm Inc.*,
129 F.4th 1129 (9th Cir. 2025)........................................................................................ 20

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)............................................................................................ 6

*Kolling v. Dow Jones & Co.*,
137 Cal. App. 3d 709 (1982)..................................................................................... 13, 17

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003)................................................................................................... 20

*Krehl v. Baskin-Robbins Ice Cream Co.*,
664 F.2d 1348 (9th Cir. 1982)........................................................................ 15

*Lee v. City of L.A.*,
250 F.3d 668 (9th Cir. 2001)........................................................................ 6

*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007)........................................................................ 16

*Madrid v. Perot Sys. Corp.*,
130 Cal. App. 4th 440 (2005)........................................................................ 20

*Mailand v. Burckle*,
20 Cal. 3d 367 (1978)........................................................................ 6, 14

*McKenna v. WhisperText*,
No. 5:14-cv-00424-PSG, 2015 WL 5264750 (N.D. Cal. Sept. 9, 2015)........................................ 21

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984)........................................................................ 14

*In re Musical Instruments & Equip. Antitrust Litig.*,
798 F.3d 1186 (9th Cir. 2015)........................................................................ *passim*

*Ohio v. Am. Express Co.*,
585 U.S. 529 (2018)........................................................................ 15

*In re Pork Antitrust Litig.*,
781 F. Supp. 3d 758 (D. Minn. 2025)........................................................................ 11

*Rebel Oil Co. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995)........................................................................ 15

*Reddy v. Litton Indus., Inc.*,
912 F.2d 291 (9th Cir. 1990)........................................................................ 21

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)........................................................................ 6

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015)........................................................................ 7

*Shersher v. Super. Ct.*,
154 Cal. App. 4th 1491 (2007)........................................................................ 20

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.)........................................................................ 6

*State Oil Co. v. Khan*,
522 U.S. 3 (1997)........................................................................ 16

*Tanaka v. Univ. of S. Cal.*,
252 F.3d 1059 (9th Cir. 2001) ..... 15

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..... 7, 8

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008) ..... 14

*United States v. Apple Inc.*,
952 F. Supp. 2d 638 (S.D.N.Y. 2013) ..... 13

*United States v. Colgate & Co.*,
250 U.S. 300 (1919) ..... 19

*In re Valve Antitrust Litig.*,
No. 2:21-cv-00563-JNW (W.D. Wash.) ..... 4, 5, 10, 13

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ..... 21

*William O. Gilley Enters., Inc. v. Atl. Richfield Co.*,
588 F.3d 659 (9th Cir. 2009) (per curiam) ..... 16, 21

**Statutes**

Cal. Bus. & Prof. Code § 16720(a)–(d), (e)(4) ..... 7

Cal. Bus. & Prof. Code § 16750.1 ..... 17

Cal. Bus. & Prof. Code § 16756.1 ..... 6

Cal. Bus. & Prof. Code § 17208 ..... 17

**Other Authorities**

FRCP 12(b)(6) ..... 21

FRCP 12(f) ..... 21

## STATEMENT OF THE ISSUES TO BE DECIDED

This motion raises the following issues:

1. **Agreement:** whether the Complaint plausibly alleges that SIE joined any agreement among publishers or any other conspiracy in restraint of trade.

2. **Standard of antitrust review:** whether SIE's own arrangement with Valve, a vertical arrangement that fixes no price, is governed by the rule of reason rather than the per se rule.

3. **Unreasonable restraint and antitrust injury:** whether the Complaint fails to allege an unreasonable restraint of trade attributable to SIE under the rule of reason, or antitrust injury caused by SIE under any standard.

4. **UCL claim:** whether Plaintiffs adequately allege unlawful or unfair conduct by SIE and a basis for the monetary relief they seek under the UCL.

5. **Leave to amend:** whether amendment would be futile, warranting dismissal with prejudice, at least as to Plaintiffs' per se and horizontal theories.

**MEMORANDUM IN SUPPORT OF SONY INTERACTIVE ENTERTAINMENT LLC'S MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiffs' case against Sony Interactive Entertainment LLC ("SIE") rests on one idea: that a game publisher becomes a price-fixer by accepting the terms a distributor sets for selling its games. The Ninth Circuit has rejected that idea, and the Complaint does not allege a single fact about what SIE did.

In Seattle, where the same Steam parity terms challenged here have been litigated for five years, a federal court has certified a class of game publishers to pursue claims against Valve Corporation ("Valve"). In this case, Plaintiffs say the publishers who accepted those terms instead conspired with Valve to fix prices. The same terms cannot be something imposed on publishers in one case and a cartel they formed in another.

The Complaint does not try to reconcile the two. It barely mentions SIE. For every other Developer Defendant, it at least alleges that the company develops, publishes, or sells PC games. For SIE, it offers an address and a conclusion: that SIE "participated in the price-fixing conspiracy." Compl. ¶ 24. It identifies no SIE game, price, contract term, or communication, and no Plaintiff who bought anything from SIE. That alone requires dismissal.

The theory fails on its own terms, too. What the Complaint describes is one distributor setting terms and many publishers accepting them. Plaintiffs allege that Valve "demands" parity as the price of access to Steam's customers, and they concede that "Valve may have had leverage over the Developer Defendants." *Id.* ¶¶ 39, 67. They allege no communication among publishers, no reason any publisher would need its rivals to go along, and no reason a publisher would conspire to steer sales toward the channel that, on Plaintiffs' telling, charges publishers the most. The Ninth Circuit has held that manufacturers' decisions "to heed similar demands made by a common, important customer do not suggest conspiracy or collusion." *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1195 (9th Cir. 2015) ("*Musical Instruments*"). Plaintiffs call what is left a hub-and-spoke conspiracy. But as the Ninth Circuit asked, "what is a wheel without a rim?" *Id.* at 1192 n.3.

What remains is SIE's own arrangement with Valve. That arrangement is vertical, it sets no price, and it is judged under the rule of reason, which the Complaint cannot satisfy as to SIE. Plaintiffs plead no market power for SIE, no effect on competition traceable to anything SIE accepted, and no injury to any Plaintiff caused by SIE. Labeling the arrangement price fixing does not change the analysis. The per se rule still requires an agreement on price, which the Complaint does not allege, and antitrust injury, which Plaintiffs cannot show without alleging that they bought anything from SIE.

The UCL claim fails with the Cartwright Act claim. Its unlawful prong borrows the same theories. Its unfair prong would condemn a publisher for accepting a platform rule that, in the case Plaintiffs rely on, the developer challenged rather than imposed. And Plaintiffs cannot obtain restitution of money they do not allege SIE ever received. Because these defects are legal, not factual, the Complaint should be dismissed with prejudice, at least as to Plaintiffs' per se and horizontal theories.

## II. BACKGROUND

Valve operates Steam, a digital storefront through which consumers buy and download PC games. Compl. ¶¶ 2, 46. Plaintiffs Alexander Shimota, Ricardo Camargo, and John Elliott are California residents who allege they purchased PC games "subject to" the alleged agreements "between Valve and the Developer Defendants, and between Valve and other developers." *Id.* ¶¶ 15–17. Plaintiffs do not identify any game they purchased or from whom. *Id.* They sue Valve and ten other companies, which they call the "Developer Defendants." *Id.* at 2.

Plaintiffs allege that Valve, in exchange for access to Steam's users, requires publishers to limit the offers they make on competing storefronts. *Id.* ¶¶ 34, 39–40, 54. They allege restrictions in four categories: (1) "Price Parity" (no lower prices elsewhere); (2) "Content Parity" (no exclusive content elsewhere); (3) "Release Date Parity" (no earlier releases elsewhere); and (4) "Anti-Steering" (no in-game links or references to other stores). *Id.* ¶¶ 39, 57, 69–70. Publishers that comply are allegedly rewarded with "free advertisement, favorable visibility in major sales, and free Steam Keys"; publishers that do not are allegedly "punished by Valve with threats of

delisting or other punishments." *Id.* ¶¶ 60–61. Plaintiffs acknowledge that "Valve may have had leverage over the Developer Defendants." *Id.* ¶ 67.

For the written terms, the Complaint relies on a single provision of Valve's Steam Distribution Agreement ("SDA") addressing downloadable content ("DLC"). *Id.* ¶¶ 55–59. That provision states that a publisher who offers "material DLC" on another storefront will "deliver the DLC to Valve at the same time," leaves the publisher "free to offer special and unique promotional content" on other channels, and calls for "material parity" for users "who make a comparable investment in the Application and the associated DLC." *Id.* ¶ 55. The provision does not mention price; Plaintiffs read "comparable investment" to mean "a comparable price." *Id.* ¶ 56.

Plaintiffs also rely on Valve's guidelines for Steam Keys (vouchers for copies of games on Steam). As quoted in the Complaint, the guidelines permit a publisher to "run a discount on different stores at different times" so long as Steam customers receive "the same offer . . . within a reasonable amount of time." *Id.* ¶¶ 5 n.2, 63. Plaintiffs allege, "[u]pon information and belief," that every Developer Defendant agreed to those guidelines. *Id.* ¶ 64. The sources Plaintiffs cite for these terms date from 2018 to 2019: an image of an SDA page posted online in 2019, and an expert report filed in *In re Valve Antitrust Litig.*, No. 2:21-cv-00563-JNW (W.D. Wash.) ("*In re Valve*"), describing communications from 2018 and 2019. *Id.* ¶¶ 55 n.9, 57 n.10, 63 n.12, 66 n.13.

Plaintiffs plead two theories: a vertical theory, under which each Developer Defendant agreed with Valve "as their distributor," and a horizontal theory, under which Defendants "agreed with other distributors to fix consumer prices of PC games on their own sales channels." *Id.* ¶¶ 8–9. Although Plaintiffs assert that the Developer Defendants "combined, conspired, or agreed" to fix prices, *id.* ¶ 38, they allege no communication, meeting, or other contact among them. Plaintiffs allege that because Valve charges a higher "distribution tax" than most rival storefronts, the restrictions steered sales to the most expensive channel and raised consumer prices. *Id.* ¶¶ 74–75. They allege that the relevant market is the retail distribution of PC games in the United States, that Steam accounts for at least 70 percent of PC game sales, and that Defendants together account for about 90 percent. *Id.* ¶¶ 44, 48–50.

They assert claims under the Cartwright Act and California's Unfair Competition Law ("UCL") on behalf of a proposed class of California residents who purchased PC games "from any of the Defendants." *Id.* ¶¶ 85, 102–41. They seek treble damages, restitution, disgorgement of profits, attorneys' fees, and injunctive relief. *Id.* ¶¶ 121, 138–40.

The allegations about SIE fill a single paragraph. It alleges that SIE is "a California corporation with headquarters in San Mateo" and that SIE "participated in the price-fixing conspiracy and took affirmative actions in furtherance of the conspiracy to the detriment of all California PC game consumers." *Id.* ¶ 24.[1]

Unlike the paragraph for every other Developer Defendant, it does not allege that SIE develops, publishes, or sells PC games. *Compare id.*, *with id.* ¶¶ 18–23, 25–26, 28. The Complaint identifies no SIE game, price, or contract term, and no communication between SIE and Valve or any other publisher. Its only other reference to SIE lists it among companies that resell Steam Keys. *Id.* ¶ 131.

This case follows five years of litigation over the same Steam terms. Since 2021, game publishers and consumers have been litigating against Valve in the Western District of Washington, alleging that Valve imposes its parity policies on publishers as a condition of selling on Steam. *See In re Valve*, ECF No. 1. That court has certified a class of publishers to pursue those claims against Valve, a class that by its definition includes publishers like SIE. *Id.*, ECF No. 391 at 26. In doing so, it evaluated the evidence of Valve's price-parity policy "under the rule of reason," *id.* at 22, and found that "it is the game company that decides how much of the commission to pass on to the gamer," *id.* at 3. Plaintiffs rely on that order. Compl. ¶ 45 n.8.

Two of the Plaintiffs here are already parties to that litigation. In 2024, Camargo and Elliott, represented by the same counsel as here, sued Valve over the same policies without naming any publisher as a defendant. *Elliott v. Valve Corp.*, No. 2:24-cv-01218 (W.D. Wash.), ECF No. 1. Their case is now part of *In re Valve*, where the court chose different counsel to lead the consumer class. *In re Valve*, ECF Nos. 394, 441. This action followed.

---

[1] SIE is a limited liability company, not a corporation.

## III. LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Allegations "merely consistent with" liability are not enough, and the Court need not accept "a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The Court may consider documents incorporated by reference in the Complaint and matters of public record, including filings in other courts, though not for the truth of disputed facts. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–99, 1002 (9th Cir. 2018); *Lee v. City of L.A.*, 250 F.3d 668, 689–90 (9th Cir. 2001); *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Nor need it accept allegations contradicted by those materials. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

## IV. ARGUMENT

SIE's motion should be granted for two reasons. The Complaint does not state a Cartwright Act claim against SIE: it alleges no facts about SIE, no agreement among publishers, no unreasonable restraint of trade attributable to SIE, and no injury caused by SIE. And the UCL claim fails with it and seeks relief the UCL does not provide. Because the defects in Plaintiffs' per se and horizontal theories are legal rather than factual, SIE respectfully asks the Court to reach each ground.

### A. Plaintiffs Fail to State a Cartwright Act Claim Against SIE

Where, as here, a Cartwright Act claim rests on an alleged agreement in restraint of trade, courts apply the same analysis as under Section 1 of the Sherman Act. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *see Mailand v. Burckle*, 20 Cal. 3d 367, 376 (1978) ("federal cases interpreting the Sherman Act are applicable in construing our state laws").[2]

[2] California's recent amendment providing that a Cartwright Act complaint "shall not be required to allege facts tending to exclude the possibility of independent action," Cal. Bus. & Prof. Code § 16756.1 (effective Jan. 1, 2026), does not change that analysis here. SIE does not ask Plaintiffs to exclude independent action. It asks only for the showing the statute deems sufficient: "factual allegations demonstrating that the existence of a contract, combination . . . , or conspiracy to restrain trade or commerce is plausible." *Id*. Federal pleading standards also govern state-law claims in this

Plaintiffs therefore must plead facts plausibly showing (1) a contract, combination, or conspiracy (2) that unreasonably restrains trade. *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1046 (9th Cir. 2008). Every theory in Plaintiffs' Cartwright Act claim requires such a combination, so each fails for the reasons below. *See* Compl. ¶¶ 111–14 (invoking Cal. Bus. & Prof. Code § 16720(a)–(d), (e)(4)).

The Complaint alleges no facts about what SIE did. It alleges no agreement among publishers, so the market-wide conspiracy it posits does not exist. What remains—SIE's own arrangement with Valve—fixes no price and is governed by the rule of reason, which the Complaint does not satisfy as to SIE. And under any standard, Plaintiffs allege no antitrust injury caused by SIE.

**1. The Complaint Alleges No Facts About SIE**

An antitrust complaint must answer the "basic questions: who, did what, to whom (or with whom), where, and when?" *Kendall*, 518 F.3d at 1048. Because liability turns on each defendant's own participation, a complaint "must allege that each individual defendant joined the conspiracy and played some role in it because, at the heart of an antitrust conspiracy is an agreement and a conscious decision by each defendant to join it." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (citation omitted); *see D'Augusta v. Am. Petro. Inst.*, 117 F.4th 1094, 1104–05 (9th Cir. 2024) (holding plaintiffs must plead "which defendants" took anticompetitive actions "or when or how they allegedly made these decisions"). General allegations as to all defendants do not suffice. *In re TFT-LCD*, 586 F. Supp. 2d at 1117; *Musical Instruments*, 798 F.3d at 1193; *see SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015) ("A plaintiff in a § 1 case cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group.").

As to SIE specifically, the Complaint alleges only three things. First, that SIE is headquartered in San Mateo. Compl. ¶¶ 24, 33. That has nothing to do with the purported

---

Court, *cf. Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009), and nothing in the amendment excuses a plaintiff from pleading facts showing what each defendant allegedly did.

conspiracy. Second, that SIE "participated in the price-fixing conspiracy and took affirmative actions in furtherance of the conspiracy to the detriment of all California PC game consumers." *Id.* ¶ 24. That is a legal conclusion, not a fact about SIE, and the Complaint repeats it nearly word for word for every Developer Defendant. *Compare id.* ¶ 24, *with id.* ¶¶ 18–23, 25–28. Third, that SIE is among multiple Defendants that allegedly resell Steam Keys. *Id.* ¶ 131. That alleges only that SIE sells vouchers for games on Steam, not that SIE agreed with anyone to fix the price of anything.

What the Complaint does ***not*** allege about SIE is more telling. For every other Developer Defendant, it alleges at least that the company develops, publishes, or sells PC games. *Id.* ¶¶ 18–23, 25–26, 28. For SIE, it does not. It identifies no SIE game sold through Steam, no SIE game a Plaintiff bought, and no price SIE charged on Steam or anywhere else. Beyond the generic allegation that each Developer Defendant's purported agreement with Valve contained "identical" or "substantially equivalent" language, *id.* ¶ 55, it does not allege what terms SIE accepted or when. It does not allege that Valve ever asked SIE to match a price, threatened to delist or stop promoting an SIE game, or gave SIE promotion, Steam Keys, or any other "consideration." It does not allege a single communication between SIE and Valve or between SIE and any other publisher; the only Valve communications Plaintiffs cite went to unidentified developers. *See id.* ¶¶ 60 & n.11, 66 & n.13.

Plaintiffs try to fill these gaps by attributing conduct to the "Developer Defendants" as a group, *see, e.g.*, *id.* ¶¶ 38, 40, 52, 59, 62, 64, 76, but group pleading cannot establish a particular defendant's participation in a conspiracy. *TFT-LCD*, 586 F. Supp. 2d at 1117; *see Twombly*, 550 U.S. at 565 n.10 (complaint "mentioned no specific time, place, or person involved in the alleged conspiracies"). The group allegations are conclusory in any event. Plaintiffs assert that the Developer Defendants "combined, conspired, or agreed to fix prices," Compl. ¶ 38, "agreed to Valve's demands for market-wide parity," *id.* ¶ 40, and did so "knowing that the purpose of [Valve's terms] was to harm competition," *id.* ¶ 73. Each assertion restates an element. *See Twombly*, 550 U.S. at 555, 557. The Ninth Circuit affirmed dismissal in *Kendall* of materially indistinguishable allegations that the defendant banks "knowingly, intentionally and actively participated" in a scheme to fix fees. 518 F.3d at 1048. And Plaintiffs' assertion that all Developer

Defendants "agreed to and obeyed" Valve's Steam Key terms is pleaded only "[u]pon information and belief." Compl. ¶ 64; *see Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 926–27 (9th Cir. 2013).

**2. The Complaint Alleges No Agreement Among Publishers**

Plaintiffs' theory of a single, market-wide conspiracy requires an agreement among the publishers themselves; without one, the Complaint describes at most separate arrangements between Valve and individual publishers. An antitrust agreement requires "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement." *Copperweld Corp. v. Indep.*, 467 U.S. 752, 771 (1984) (quoting *Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)). Allegations of parallel conduct, even consciously parallel conduct, are insufficient; a plaintiff must plead "something more," a "further circumstance pointing toward a meeting of the minds." *Musical Instruments*, 798 F.3d at 1193 (quoting *Twombly*, 550 U.S. at 557, 560). That "something more" consists of plus factors: "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action." *Id.* at 1194. The Complaint pleads none.

**Accepting a dominant distributor's terms is independent conduct.** The Ninth Circuit has already addressed this pattern. In *Musical Instruments*, the plaintiffs alleged that each manufacturer adopted similar pricing policies after it was "pressured by Guitar Center," and the complaint conceded that each manufacturer "responded to Guitar Center's pressure and coercion" by adopting them "in exchange for Guitar Center's agreement to purchase large volumes" of its products. 798 F.3d at 1195. The court held that "[m]anufacturers' decisions to heed similar demands made by a common, important customer do not suggest conspiracy or collusion" but instead reflect "self-interested independent parallel conduct in an interdependent market." *Id.* Such a response to market pressure "is a hallmark of independent parallel conduct—not collusion." *Id.* at 1196.

This Complaint pleads the same thing. Valve allegedly "demands" parity in exchange for access to Steam's users, Compl. ¶ 39; rewards publishers that comply with promotion and Steam Keys, *id.* ¶¶ 61–62; and punishes those that do not with "threats of delisting," *id.* ¶ 60. Plaintiffs

concede that "Valve may have had leverage over the Developer Defendants." *Id.* ¶ 67. A publisher that accepts those terms does so because Steam is where "the vast majority of PC game consumers buy their games," *id.* ¶ 35, not because other publishers agreed to do the same. Applying the same principles to parity clauses between the dominant e-book retailer and the five largest publishers, a court concluded that each publisher "could have rationally concluded that it was in its own self-interest" to deal with that retailer, "even if it required acceding to Amazon's request for a [most-favored-nation] clause," and could expect its rivals to reach the same conclusion "whether or not a preexisting agreement among the Publishers existed." *In re Amazon.com, Inc. eBook Antitrust Litig.*, No. 21-cv-00351 (GHW) (VF), 2022 WL 4581903, at *15 (S.D.N.Y. Aug. 3, 2022), *report and recommendation adopted*, 2022 WL 4586209 (S.D.N.Y. Sept. 29, 2022). If anything, a publisher would prefer that its rivals refuse Valve's terms: it would then have Steam's customers to itself.

Nor do Plaintiffs plead any reason SIE would join a conspiracy whose object, on their account, is to funnel sales through "the most expensive distribution channel" that allegedly charges a higher "distribution tax" than most of its rivals. Compl. ¶ 74. In *Amazon eBook*, the court found it "telling" that the complaint offered "no plausible explanation for why the Publishers would have been motivated to participate in a conspiracy that further entrenched Amazon's dominance as an eBook retailer." 2022 WL 4581903, at *16. The same is true here, with one difference that makes Plaintiffs' theory less plausible still: a federal court has certified a class of publishers, one that by its definition includes publishers like SIE, to recover over these same terms. *In re Valve*, ECF No. 391 at 26.

The other plus factors are absent too. Plaintiffs allege no communication among publishers; every communication they describe runs between Valve and an individual developer. Compl. ¶¶ 60 & n.11, 63, 66 & n.13. They allege no exchange of competitively sensitive information among publishers, through Valve or otherwise. And they allege no coordinated timing; the Complaint does not say when any publisher, including SIE, accepted Valve's terms. *See id.* ¶ 38 (alleging a conspiracy beginning "at a time unknown to the Plaintiffs"). The Ninth Circuit has held that competitors' independent decisions to use the same service provider, "absent evidence of

agreement among [them] to do so," do not state a claim, because antitrust law does not "require businesses to decline to take advantage of a service because its competitors already use that service." *Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069, 1083–84 (9th Cir. 2025), *cert. denied*, 146 S. Ct. 2562 (2026); *see also 49er Chevrolet, Inc. v. Gen. Motors Corp.*, 803 F.2d 1463, 1468 (9th Cir. 1986) ("[I]t is a longstanding antitrust principle that Section 1 of the Sherman Act does not preclude a party from unilaterally determining the parties with whom it will deal and the terms on which it will transact business."); *Blind Dr. Inc. v. Hunter Douglas, Inc.*, No. 04-cv-2678, 2004 WL 1976562, at *5 (N.D. Cal. Sept. 7, 2004) (holding that non-price restrictions as a condition of doing business are not antitrust violations).

Plaintiffs cannot fill the gap with *Interstate Circuit, Inc. v. United States*, 306 U.S. 208 (1939). There, a theater chain sent its demands to eight film distributors in a single letter naming all of them as addressees, so that "each of the distributors knew that the proposals were under consideration by the others," and "each knew that cooperation was essential to successful operation of the plan." *Id.* at 222, 226. The key to the conspiracy finding was the Court's "determination that each distributor's decision to accede to Interstate's demands would have been economically self-defeating unless the other distributors did the same." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 331 (3d Cir. 2010). Nothing like that is alleged here. Selling through the storefront where most consumers shop for PC games is rational for a publisher, regardless of what its rivals do. As one court recently put it, *Interstate Circuit* "was decided nearly a century ago, and since then caselaw has developed in such a way as to indicate that parallel conduct and plus factors are typically important to support a per se violation of § 1." *In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758, 800 (D. Minn. 2025) (treating invitation and acceptance as a plus factor, "not a standalone pathway to liability").

Nor does the Complaint resemble the cases in which courts have found a hub-and-spoke conspiracy plausibly alleged among an intermediary's customers. Those cases turned on allegations that each participant shared confidential competitive information with the intermediary, knowing its rivals were doing the same. *See, e.g.*, *Duffy v. Yardi Sys., Inc.*, 758 F. Supp. 3d 1283, 1293 (W.D. Wash. 2024); *Cornish-Adebiyi v. Caesars Ent., Inc.*, 184 F.4th 172, 182–83, 189–90 (3d Cir. 2026).

The Complaint alleges nothing of the kind: no pooling of information and no exchange of data among publishers, through Valve or anyone else.

**No rim.** Recast as a hub-and-spoke conspiracy, *see* Compl. ¶¶ 5, 38, 40–41, 52–53, 59, the theory fails for the same reasons. A hub-and-spoke conspiracy is "a collection of vertical and horizontal agreements," and "a rimless hub-and-spoke conspiracy is not a hub-and-spoke conspiracy at all (for what is a wheel without a rim?); it is a collection of purely vertical agreements," judged under the rule of reason. *Musical Instruments*, 798 F.3d at 1192 & n.3; *see Ins. Brokerage*, 618 F.3d at 327 (rimless wheel is one in which defendants "enter into separate agreements with a common defendant, but where the defendants have no connection with one another, other than the common defendant's involvement in each transaction" (quoting *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002))). The Complaint supplies no rim. Its own description of the conspiracy—that "Valve and the Developer Defendants have conspired with Valve"—runs every connection through Valve. Compl. ¶ 5; *see id.* ¶ 59. And the "consideration" Valve allegedly gave each publisher, *id.* ¶¶ 61–62, is a term of each bilateral deal, not a link among publishers. *See Musical Instruments*, 798 F.3d at 1195 (policies adopted "in exchange for" retailer's purchases).

**No horizontal agreement among distributors.** Plaintiffs' express horizontal theory does not reach SIE either. That theory is an agreement among competing distributors "to fix consumer prices of PC games on their own sales channels." Compl. ¶ 8. The Complaint's only allegation about SIE's sales, that SIE resells Steam Keys, *id.* ¶ 131, describes selling access to Steam, not competing with it.

### 3. SIE's Own Arrangement with Valve Fixes No Price and Is Governed by the Rule of Reason

Without a rim, what remains is SIE's own arrangement with Valve. A written distribution agreement with Valve may be a "contract," even if Valve offers it on take-it-or-leave-it terms. *See Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 982 (9th Cir. 2023). But as the Ninth Circuit explained in the same passage, antitrust law's concern with such contracts is the "special ability . . . to force [a contracting partner] to do something that he would not do in a competitive market." *Id.*

(alteration in original) (quoting *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 13–14 (1984)). On Plaintiffs' own allegations, SIE is the contracting partner, not the party setting the terms. Compl. ¶¶ 34, 39, 67. Plaintiffs' own authority treats parties in that position as plaintiffs, not co-conspirators: in the case they cite for the scope of California's per se rule, the distributors subject to a supplier's pricing demands were the ones who sued. *Kolling v. Dow Jones & Co.*, 137 Cal. App. 3d 709, 720 (1982); *see* Compl. ¶ 7 n.3. And whatever its terms, an agreement between a supplier and its distributor is vertical, and a vertical restraint "is not illegal per se unless it includes some agreement on price or price levels." *Bus. Elecs. Corp. v. Sharp Elecs. Corp.*, 485 U.S. 717, 735–36 (1988); *see Gibson*, 148 F.4th at 1080; *Musical Instruments*, 798 F.3d at 1192 n.3.

**The per se rule does not apply.** The rule of reason is the presumptive framework under the Cartwright Act, which California courts construe to prohibit only unreasonable restraints. *In re Cipro Cases I & II*, 61 Cal. 4th 116, 146 (2015); *see Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal. 5th 1130, 1159 (2020). Per se treatment is reserved for "categories of agreements or practices that can be said to always lack redeeming value." *Cipro*, 61 Cal. 4th at 146. Courts look to the nature of the restraint—not the label a plaintiff attaches to it—and they reserve per se treatment for practices with which they have "considerable experience." *Broad. Music, Inc. v. CBS, Inc.*, 441 U.S. 1, 9 (1979) (quoting *United States v. Topco Assocs., Inc.*, 405 U.S. 596, 607–08 (1972)). Platform parity terms are not among them. A most-favored-nation (MFN) clause is a "standard device[ ]" by which a buyer seeks to be treated "as favorably as any of [the seller's] other customers"; "[i]t is not price-fixing." *Blue Cross & Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995). "[E]ntirely lawful contracts may include an MFN, price caps, or pricing tiers," and "[i]t is also not illegal for a company to adopt a form 'click-through' contract." *United States v. Apple Inc.*, 952 F. Supp. 2d 638, 698 (S.D.N.Y. 2013), *aff'd*, 791 F.3d 290 (2d Cir. 2015). The Ninth Circuit applied the rule of reason, which governs "[m]ost restraints," to a developer's Section 1 challenge to a platform's developer agreement. *Epic*, 67 F.4th at 974–75. And the *In re Valve* court evaluated the evidence of Valve's price-parity policy "under the rule of reason." ECF No. 391 at 22 & n.15; *see also Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 986–88 (W.D. Wash. 2022) (rejecting per se treatment of platform price-parity restraints).

Plaintiffs invoke the per se rule for a single category: price fixing. Compl. ¶¶ 10–11, 110, 116. But no term alleged here fixes a price. Plaintiffs rely on *Mailand*, *id.* ¶ 11 n.4, which condemned a franchise provision "permitting defendants to fix the price at which plaintiffs could sell gasoline," 20 Cal. 3d at 376, and whose example of vertical price fixing was a supplier setting its reseller's price, *id.* at 377 (citing *Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911)). The terms alleged here set no price at any level. The SDA provision addresses when and on what terms publishers deliver DLC to Steam; it does not mention price, and even on Plaintiffs' reading of "comparable investment," it would tie the offer to Steam users to the publisher's own offers elsewhere rather than fix what anyone charges. Compl. ¶¶ 55–56. The Steam Key guidelines expressly permit a publisher to "run a discount on different stores at different times." *Id.* ¶ 63. Nothing in the Complaint suggests that Valve sets, or has any say over, the price at which SIE offers any game anywhere. That is not price fixing in any sense the per se cases recognize.

**The enforcement Plaintiffs allege is unilateral conduct.** To the extent Plaintiffs rely on what Valve allegedly does beyond the written terms, Compl. ¶¶ 60, 65–66, they describe a company's decisions about the terms on which it will deal. A company may announce the terms on which it will deal and refuse to deal with those who do not comply. *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 761 (1984); *Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1261 (9th Cir. 1983). California applies the same rule under the Cartwright Act. *Chavez v. Whirlpool Corp.*, 93 Cal. App. 4th 363, 367–68, 373 (2001); *Beverage v. Apple, Inc.*, 101 Cal. App. 5th 736, 749–50 (2024) ("a claim describing only a unilateral refusal to deal without alleging a corresponding illegal conspiracy or combination does not state an actionable antitrust claim" (citing *Kolling*, 137 Cal. App. 3d at 720)). Such conduct is not an agreement among publishers, and it adds nothing to the vertical arrangement each publisher has with Valve.

The remaining terms, content parity, release-date parity, and anti-steering, are nonprice vertical restraints that California courts likewise evaluate under the rule of reason. *Flagship Theatres of Palm Desert, LLC v. Century Theatres, Inc.*, 55 Cal. App. 5th 381, 406 (2020); *Exxon Corp. v. Super. Ct.*, 51 Cal. App. 4th 1672, 1680–81 (1997); *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1000 (9th Cir. 2008). The Supreme Court has likewise explained that

anti-steering provisions, "like nearly every other vertical restraint," are assessed under the rule of reason. *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018). And SIE's alleged resale of Steam Keys, Compl. ¶ 131, does not change the analysis, because restrictions in dual-distribution arrangements, where a supplier also competes with its distributor at retail, are also judged under the rule of reason. *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1481–83 (9th Cir. 1986); *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1356–57 (9th Cir. 1982).

#### 4. The Complaint Alleges No Unreasonable Restraint Attributable to SIE

Because the rule of reason governs, Plaintiffs must plead facts plausibly showing that the challenged restraint "has a substantial anticompetitive effect that harms consumers in the relevant market." *Gibson*, 148 F.4th at 1080 (citation omitted); *see Am. Express*, 585 U.S. at 541; *Cipro*, 61 Cal. 4th at 146. They "may not merely recite the bare legal conclusion that competition has been restrained unreasonably." *Gibson*, 148 F.4th at 1080 (quoting *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012)). Courts regularly dismiss claims at the pleading stage on this ground. *See Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063–64 (9th Cir. 2001); *Brantley*, 675 F.3d at 1197–98, 1201–02; *Gibson*, 148 F.4th at 1080, 1087–88 (affirming dismissal where separate agreements with a common counterparty, absent any agreement among its customers, did not restrain trade in the relevant market).

A plaintiff can make that showing in two ways: (1) by alleging direct evidence of "actual detrimental effects on competition," such as reduced output, increased prices, or decreased quality in the relevant market; or (2) by alleging indirect evidence that the defendant has market power in the relevant market and that the restraint harms competition there. *Am. Express*, 585 U.S. at 542 (citation omitted). Market power is the ability to raise prices above competitive levels and sustain them for an extended period. *See Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995). The Complaint pleads neither as to SIE.

*First*, Plaintiffs allege no market power for SIE. The Complaint attributes no market share at all to SIE, and the 90 percent share it attributes to Defendants collectively includes Valve, whose Steam storefront alone allegedly accounts for at least 70 percent. Compl. ¶¶ 49–50. Absent a plausible conspiracy, Defendants' shares cannot be aggregated to attribute to SIE market power it

is not alleged to have. *Bookhouse of Stuyvesant Plaza, Inc. v. Amazon.com, Inc.*, 985 F. Supp. 2d 612, 621–22 (S.D.N.Y. 2013). Nor can separate agreements with a common counterparty be aggregated to find a restraint absent an allegation that each agreement has "a discrete effect on competition." *Gibson*, 148 F.4th at 1087 (describing *William O. Gilley Enters., Inc. v. Atl. Richfield Co.*, 588 F.3d 659, 665 (9th Cir. 2009) (per curiam)). The Complaint alleges no discrete effect of anything SIE accepted.

*Second*, Plaintiffs allege no anticompetitive effects attributable to SIE. As applied to SIE, the alleged restraint reaches only how SIE's own titles are offered across storefronts. It could affect competition among storefronts only in combination with the same terms applied to every other publisher's titles, which is to say, only through the conspiracy Plaintiffs have not pleaded. As the *Amazon eBook* court explained, "because each Publisher controls only its own prices, there must be a basis to plausibly infer that one Publisher's agreement with Amazon caused the other Publishers to raise their prices." 2022 WL 4581903, at *23. The Complaint offers none. It identifies no SIE game whose price was higher than it otherwise would have been, no storefront that was unable to compete because of any term SIE accepted, and no Plaintiff who paid more for an SIE title. *See* Compl. ¶¶ 15–17, 24, 131. Its generalized allegations that Valve's policies raised prices and reduced choice, *id.* ¶¶ 42, 74–75, 80–84, do not suffice. An allegation that an agreement "has the effect of . . . increasing prices to consumers does not sufficiently allege an injury to competition." *Gibson*, 148 F.4th at 1088 (quoting *Brantley*, 675 F.3d at 1202).

*Third*, the antitrust laws' "primary purpose" is to protect interbrand competition, *State Oil Co. v. Khan*, 522 U.S. 3, 15 (1997), and a limit on how a single publisher's titles are offered across storefronts does not, without more, establish harm to competition in a market for the retail distribution of games. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 890 (2007); *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 52 n.19 (1977). Plaintiffs allege no facts showing that the terms SIE accepted reduced competition among distributors generally.

**5. Plaintiffs Allege No Antitrust Injury Caused by SIE**

Per se treatment would not save the claim in any event. The per se rule is a method of deciding whether a restraint is unreasonable; it does not dispense with the claim's other elements.

*See Kendall*, 518 F.3d at 1047 (listing agreement and injury to competition as separate elements).

*First*, the per se rule still requires an agreement and, for price fixing, an agreement on price. Plaintiffs allege neither as to SIE. *Twombly* itself involved an alleged horizontal agreement not to compete, a per se category, and the Court required plausible allegations of agreement all the same. 550 U.S. at 551, 556–57.

*Second*, even per se violations require antitrust injury. To plead antitrust injury, a plaintiff must allege "(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999) (citing *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). The per se rule itself "does not indicate whether a private plaintiff has suffered antitrust injury." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 342 (1990); *see Kolling*, 137 Cal. App. 3d at 721, 723 (even where price fixing is per se unlawful, "[a]n 'antitrust injury' must be proved"). Plaintiffs do not allege that they bought any SIE game, much less that they paid an inflated price for one. They allege only that they bought PC games "subject to" agreements between Valve and the Developer Defendants "and between Valve and other developers." Compl. ¶¶ 15–17. That is insufficient to allege that Plaintiffs suffered any injury caused by SIE. And absent a plausibly alleged conspiracy, SIE cannot be held responsible for injuries arising from other companies' agreements with Valve.[3]

**B. Plaintiffs Fail to State a UCL Claim**

Plaintiffs' UCL claim targets the same alleged agreements as their Cartwright Act claim. Although the Complaint recites all three UCL prongs, Compl. ¶ 124, it pleads only two: an "unlawful" prong resting on alleged antitrust violations, *id.* ¶¶ 126–29, and an "unfair" prong resting on the same parity and anti-steering terms, *id.* ¶¶ 130–37. Both fail, and the monetary relief

[3] Plaintiffs' claims are also untimely to the extent they rest on purchases made before August 27, 2022. Both claims carry four-year limitations periods. Cal. Bus. & Prof. Code §§ 16750.1, 17208. Plaintiffs plead no tolling, and the historical materials on which they rely include Valve communications from 2018 and 2019. Compl. ¶¶ 55 n.9, 57 n.10, 63 n.12, 66 n.13. The continuing-violation doctrine requires a new overt act by the defendant, not "the passive receipt of profits," *Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989), and the Complaint alleges no specific overt act by SIE within the limitations period. SIE reserves this defense.

Plaintiffs seek is unavailable.

**Unlawful prong.** The unlawful prong "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation modified). A plaintiff who fails to plead the predicate violation fails to plead an unlawful-prong claim. *Cal. Crane Sch., Inc. v. Google LLC*, 722 F. Supp. 3d 1026, 1041 (N.D. Cal. 2024), *aff'd*, No. 24-4604, 2025 WL 2541913 (9th Cir. Sept. 4, 2025); *see In re Dynamic Random Access Memory (DRAM) Indirect Purchaser Antitrust Litig.*, 28 F.4th 42, 54 n.7 (9th Cir. 2022) (Cartwright Act and UCL claims "premised upon the existence of an antitrust conspiracy" "rise and fall with the Sherman Act claim"). The Complaint identifies three predicate violations: price fixing, market allocation, and exclusive dealing. Compl. ¶¶ 127–29. Each repackages the same alleged agreements with Valve under a different antitrust label, and none is adequately pleaded. The price-fixing predicate is the Cartwright Act claim, which fails for the reasons above. Market allocation requires an agreement among competitors to divide markets, and the Complaint alleges no agreement among publishers. *Id.* ¶ 128. Exclusive dealing requires an agreement that prevents a party from dealing with others. *Gibson*, 148 F.4th at 1086 ("Exclusive dealing involves an agreement between a vendor and a buyer that prevents the buyer from purchasing a given good from any other vendor." (citation omitted)). The Complaint alleges no term preventing SIE from selling its games through other storefronts. To the contrary, the parity terms Plaintiffs challenge presuppose that publishers sell elsewhere; otherwise there would be nothing to keep at parity. Compl. ¶¶ 34, 39, 55. Without a predicate violation, the unlawful prong fails.

**Unfair prong.** A practice may be "unfair" under the UCL "even if not specifically proscribed by some other law." *Cel-Tech*, 20 Cal. 4th at 180. In consumer cases, courts ask whether the practice is tethered to an actual or threatened antitrust violation or to the policy or spirit of the antitrust laws, whether it is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or whether its harm to consumers outweighs its utility. *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1214–15 (9th Cir. 2020) (citation omitted). Plaintiffs' theory fails under each test.

Conduct that the antitrust laws affirmatively permit cannot be "unfair." In *United States v.*

*Colgate & Company*, the Supreme Court recognized that there is a "long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to the parties with whom he will deal." 250 U.S. 300, 307 (1919). "[C]onduct that the courts have determined to be permissible under the *Colgate* doctrine cannot be deemed 'unfair' under the unfair competition law." *Chavez*, 93 Cal. App. 4th at 375. That doctrine supplies a "safe harbor" against unfair-prong claims, *Beverage*, 101 Cal. App. 5th at 755, and the Ninth Circuit has recognized that categorical rules of that kind, unlike a failure of proof under the rule of reason, foreclose UCL liability, *Epic*, 67 F.4th at 1001.[4] To the extent Plaintiffs' unfair-prong theory rests on Valve's announced policies and its enforcement of them, Compl. ¶¶ 60, 65–66, the safe harbor applies and the tethering test fails for the same reason: the antitrust laws "target agreements and conspiracies in restraint of trade rather than merely unilateral conduct." *Cal. Crane Sch.*, 722 F. Supp. 3d at 1041. Nor do Plaintiffs allege facts showing that any harm from SIE's own conduct outweighs its utility, *id.* at 1040–41, or that SIE's conduct is immoral, unethical, oppressive, or unscrupulous, *see Doe*, 982 F.3d at 1215. On the Complaint's own account, SIE's conduct consists of offering its games through the storefront where "the vast majority of PC game consumers buy their games." Compl. ¶ 35.

Plaintiffs' anti-steering theory fares no better. Plaintiffs allege that even if the anti-steering terms are lawful, they are unfair because they keep consumers from learning about lower prices elsewhere. Compl. ¶¶ 132–36. For that theory, Plaintiffs rely on *Epic Games v. Apple*, where the court held that Apple's rules barring app developers from directing iPhone users to cheaper payment options outside the App Store violated the UCL's unfair prong, and the Ninth Circuit affirmed that ruling. *Epic*, 67 F.4th at 1000–03; *see* Compl. ¶¶ 72, 134. But the ruling in *Epic Games* ran against the platform that adopted the rule, not the developers bound by it. Apple was the defendant; Epic, a developer subject to the rule, was the plaintiff. On Plaintiffs' theory, SIE, a

[4] The Ninth Circuit has since read *Beverage* as limited to conduct found protected by the *Colgate* doctrine, which it distinguished from a mere failure of proof. *Epic Games, Inc. v. Apple Inc.*, 161 F.4th 1162, 1191–92 (9th Cir. 2025), *cert. granted in part*, 146 S. Ct. 2812 (2026). The enforcement Plaintiffs attribute to Valve is conduct of that kind.

publisher bound by Valve's anti-steering term, Compl. ¶ 69, stands where Epic stood. Nothing in any of the *Epic Games* decisions, including the 2025 decision Plaintiffs cite, Compl. ¶ 72 n.16, suggests that a developer acts unfairly by accepting a platform's rule. On Plaintiffs' theory, Epic would have been a co-conspirator in its own lawsuit.

**Unavailable relief.** Even if Plaintiffs had stated a UCL claim, the monetary relief they seek is unavailable. UCL remedies are narrow: "[p]revailing plaintiffs are generally limited to injunctive relief and restitution," and "may not receive damages, much less *treble* damages, or attorney fees." *Cel-Tech*, 20 Cal. 4th at 179.

Plaintiffs cannot obtain restitution from SIE because they do not allege that SIE ever received their money. Restitution "restore[s] the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). A plaintiff may seek restitution from a defendant that received the plaintiff's money indirectly, but only if the defendant acquired money in which the plaintiff had an ownership interest. *Shersher v. Super. Ct.*, 154 Cal. App. 4th 1491, 1494 (2007). No Plaintiff alleges buying an SIE game, through Steam or anywhere else, Compl. ¶¶ 15–17, and an assertion that a defendant received "ill-gotten gain does not make a viable UCL claim unless the gain was money in which plaintiff had a vested interest," *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 455 (2005). What Plaintiffs actually seek, disgorgement of Defendants' "illegal profits," Compl. ¶ 139, is non-restitutionary disgorgement, which the UCL does not permit. *Korea Supply*, 29 Cal. 4th at 1148–52. And the UCL itself does not authorize attorneys' fees. *Cel-Tech*, 20 Cal. 4th at 179.

Finally, this Court lacks equitable jurisdiction to award restitution in any event. A federal court may award equitable restitution only if the plaintiff lacks an adequate legal remedy. *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 843-44 (9th Cir. 2020)). Plaintiffs have one: treble damages under the Cartwright Act for the same alleged harm. Compl. ¶ 121. Treble damages are "hardly an inadequate remedy," and a plaintiff's failure to prove a Cartwright Act claim "does not make that remedy inadequate." *Key v. Qualcomm Inc.*, 129 F.4th 1129, 1142 (9th Cir. 2025) (quotation omitted). Dismissal on this ground is without prejudice to pursuing restitution in state court. *Id.*; *Guzman*, 49

F.4th at 1314–15. Because Rule 12(b)(6), not Rule 12(f), is the proper vehicle for dismissing legally deficient requests for relief, *see Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010), Plaintiffs' requests for restitution, disgorgement, and fees should be dismissed.

### C. Dismissal Should Be With Prejudice

Leave to amend may be denied where amendment would be futile, *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010), including where an amended complaint could cure the defect only by contradicting the original, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990); *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014). The central defects here are not drafting omissions. Whether a vertical parity term is subject to the per se rule turns on the nature of the restraint, not on facts Plaintiffs might add. And Plaintiffs' theory requires an agreement among publishers to impose terms that, on Plaintiffs' own account, Valve required of each publisher as a condition of access to Steam. Compl. ¶¶ 39, 60, 67. Plaintiffs cannot plead around that account without contradicting it. And in evaluating any amendment, the Court "may also consider the prior allegations as part of its 'context-specific' inquiry." *McKenna v. WhisperText*, No. 5:14-cv-00424-PSG, 2015 WL 5264750, at *3, *5 (N.D. Cal. Sept. 9, 2015) (quoting *Cole v. Sunnyvale*, No. 08-cv-05017-RMW, 2010 WL 532428, at *4 (N.D. Cal. Feb. 9, 2010)) (denying leave to amend in light of plaintiff's prior allegations). The Ninth Circuit has affirmed dismissal without leave to amend where a plaintiff repeatedly recast a network of bilateral agreements as a conspiracy it could not plead. *Gilley*, 588 F.3d at 668–69. At a minimum, Plaintiffs' per se and horizontal theories should be dismissed with prejudice.

## V. CONCLUSION

For the foregoing reasons, SIE respectfully requests that the Court dismiss the claims against SIE with prejudice.

Dated: October 28, 2026

MORRISON & FOERSTER LLP

By: /s/ David A. Perez
David A. Perez (*admitted pro hac vice*)
Mallory A. Gitt (*admitted pro hac vice*)
Dianne Ryoo

*Attorneys for Defendant*
SONY INTERACTIVE ENTERTAINMENT LLC